UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

MATTHEW G. CLARK,            )
                            )
            Movant,         )
                            )
        v.                  )        2:10-cr-00062-GZS-1
                            )        2:13-cv-00332-GZS
                            )
UNITED STATES OF AMERICA,    )
                            )
            Respondent       )


## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Petitioner Matthew G. Clark filed, pursuant to 28 U.S.C. § 2255, a motion to vacate, set aside or correct his sentence following his conviction of possession of child pornography. (ECF No. 111.) Petitioner was convicted, following a bench trial, of two counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5) and (b)(2). The Court sentenced Petitioner to 210 months of imprisonment, which sentence was at the low end of the applicable sentencing guidelines range. On appeal, the First Circuit upheld the conviction and sentence. *United States v. Clark*, 685 F.3d 72 (1st Cir. 2012). In Petitioner's section 2255 motion, he asserts eleven numbered grounds. Petitioner's motion is focused in part on two successive searches of a house that he shared with his mother, Fern Clark, who was eventually convicted in state court of fifteen counts of cruelty to animals. *Id.* at 74 n.2. The government has requested a summary dismissal. The recommendation is that relief be denied and Petitioner's motion be dismissed without a hearing.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was indicted in April 2010 for possession of child pornography that was alleged to have occurred on January 19, 2008.  (ECF No. 1.)  In Count I of the indictment, the government alleged possession of videotape, and in Count II, the government alleged possession of a computer. According to the government, both devices contained images of child pornography that had been transported in interstate commerce and that had been produced using materials that had been transported in interstate commerce.  Law enforcement obtained the items during two searches at Petitioner's home.

In July 2010, Petitioner moved to suppress the evidence that had been found in the first and second searches.  (ECF No. 23.)  Both searches occurred at Petitioner's home in Somerville, Maine, on the same day in January 2008.  *Clark*, 685 F.3d at 74 & n.1.  The first was executed pursuant to a warrant to search the home of Petitioner and his mother (Fern Clark) for evidence of the crime of animal cruelty and of a civil violation for the operation of an unlicensed breeding kennel.  *Id.* at 74.  The warrant was based on a state veterinarian's affidavit that was later reviewed on appeal by the First Circuit, which upheld the District Court's determination that the affidavit established probable cause to justify the issuance of the warrant.  *Clark*, 685 F.3d at 75-79.  The Maine Supreme Judicial Court, in Fern Clark's appeal of her state conviction, also concluded that the veterinarian's affidavit established probable cause.  *State of Maine v. Clark*, Mem-10-68 (Me. May 18, 2010).  (ECF No. 30-7.)

In conducting the first search, members of the search team found a notepad near a computer work station in Petitioner's room.  The notepad contained a handwritten list of web sites suggestive of child pornography.  *Clark*, 685 F.3d at 74.  They also found photographs of nude underage males.  *Id.*  They halted the search and sought an additional warrant authorizing a search for child

pornography.  *Id.*  After obtaining the warrant, law enforcement seized the evidence that formed the basis for the indictment of Petitioner.  *Id.*

Petitioner filed a motion to suppress the evidence found in the search, arguing that:  (1) his living quarters were separate from his mother's, and probable cause was lacking because there was no evidence of animal cruelty or neglect in his living quarters and no evidence that he had either sold animals or participated in his mother's breeding kennel; (2) the photographs and lists of web sites were not in plain view during the search for paperwork related to unlicensed kennel operations; (3) the second warrant was derived from the illegal first warrant; and (4) probable cause was lacking to search for evidence of animal cruelty or an unlicensed breeding kennel.  (ECF No. 23.)

The magistrate judge held an evidentiary hearing and recommended denial of the motion to suppress.  (ECF Nos. 46, 52.)  *United States v. Clark*, 2010 WL 4365562, 2010 U.S. Dist. Lexis 115048 (D. Me. Oct. 27, 2010) (recommended decision).  The Court affirmed the recommended decision.  (ECF No. 60.)  The Court found that "the defendant's bedroom was not, as a matter of law, a separate dwelling within the Clark residence and that searchers acquired no information, before or during the execution" of the first warrant that would have put them on notice that it was a separate dwelling.  (Recommended Decision at 24-25.)  2010 WL 4365562, at *15, 2010 U.S. Dist. Lexis 115048, at *43.  The Court also found that the web site list and photographs of child pornography that the search team found among other papers were in plain view, given that the warrant permitted a search of paperwork for evidence of kennel operations.  (Recommended Decision at 27-28.)   2010 WL 4365562, at *17, 2010 U.S. Dist. Lexis 115048, at *48-49.

After the Court denied the motion to suppress, Petitioner waived his right to a jury trial during a hearing before the Court.  (ECF No. 63, 64, 102.)  The Court granted Petitioner's motion

in limine to exclude evidence of his four prior criminal convictions as part of the government's case-in-chief (Motion, ECF No. 68; Order, ECF No. 72), and the Court denied a motion in limine to exclude evidence of the list of web sites. (Motion, ECF No. 69; Order, ECF No. 73.) After a four-day bench trial in January 2011 (ECF Nos. 97-100), the Court found Petitioner guilty on both counts of the indictment. (ECF No. 86.) At Petitioner's request, the Court issued findings of fact pursuant to Fed. R. Civ. P. 23. (ECF No. 87.) *United States v. Clark*, 762 F. Supp. 2d 203 (D. Me. 2011) (findings of fact). The Court then sentenced Petitioner to a term of imprisonment of 210 months on Count I and 210 months on Count II, to be served concurrently, followed by a life term of supervised release on each of the counts, to be served concurrently. (ECF No. 93.)

Petitioner filed a notice of appeal from his conviction and sentence. (ECF No. 94.) The First Circuit affirmed both the judgment and the sentence, and issued its mandate on August 7, 2012. (ECF Nos. 106-08.) Petitioner did not file a petition for a writ of certiorari. In accordance with 28 U.S.C. § 2255, Petitioner subsequently filed this motion to vacate his sentence, in which motion Petitioner alleged numerous grounds, including ineffective assistance of counsel. The government does not dispute that Petitioner's section 2255 motion was filed timely.

## II.    DISCUSSION

### A.  Standard of Review

Pursuant to 28 U.S.C. § 2255(a), a prisoner in custody under a federal sentence may move to vacate his sentence on four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994) (quoting section 2255). Although the fourth category is "rather general,"

it is only implicated "if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Id. (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). The burden is on the section 2255 movant to make out a case for section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).

A habeas petition is not a substitute for an appeal. *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Id.* An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the movant shows that counsel's representation fell below an objective standard of reasonableness and prejudiced the movant's defense. *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).

To succeed on an ineffective assistance of counsel claim, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697.

As for the "cause" test, the court must be "fairly tolerant" of counsel's performance because the Constitution does not guarantee a perfect defense. *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 446 U.S. at 689).

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The court must consider "the totality of the evidence before the judge or jury" when measuring the prejudicial effect. *Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002). Factors that are commonly considered include the strength of the prosecution's case, the effectiveness of the defense presented at trial, and the potential for new evidence and new avenues for cross-examination to undermine the credibility of government witnesses. *Turner*, 699 F.3d at 584. In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 56 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). It is appropriate to expect the petitioner to supply the court with salient details of his claim prior to permitting

discovery or a hearing.  *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.  Grounds Asserted and Analysis**

**1.  Ground One: Claim of Lack of Sufficient Nexus to Interstate Commerce**

Petitioner argues that relief is warranted because the government could not as a matter of law satisfy the interstate commerce element of the charges.  First, Petitioner contends that the statute of limitations regarding the computer-related charges involving interstate commerce expired because his computer was manufactured in the early 1990s.  Second, he asserts that the government did not prove how the computer and tapes came into his possession through interstate commerce.  Third, he asserts the Court expressed uncertainty about its finding of interstate commerce.  The government contends that this claim is procedurally defaulted and Petitioner has made no showing of cause or prejudice.  The government also contends that Petitioner's argument fails on its merits.

At the time of the January 2008 date alleged in the indictment, as now, the statute under which Petitioner was convicted included an interstate commerce element.   18 U.S.C. § 2252A(a)(5)(B).  The version of the statute in effect on the date of the crime as alleged in the indictment provided that any person who

> knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer **. . .**

> shall be punished as provided in subsection (b).

*Id.*[1]  Petitioner stipulated that the hard drive at issue and at least two of the video tapes entered into evidence were manufactured outside of Maine and thus had traveled in interstate commerce. *Clark*, 762 F. Supp. 2d at 205.  (Trial Tr. 1/25/2011 at 72, ECF No. 98.)  Petitioner nevertheless argued at trial that section 2252A was unconstitutional on its face and as applied to Petitioner on Count I, which related to the videotapes.  (Trial Tr. 1/26/2011 at 3-4, 82-84, ECF No. 99.)

Petitioner's appellate counsel, who did not participate in the trial, did not make an interstate commerce argument on appeal.  Petitioner's arguments on the issue, therefore, are procedurally defaulted.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (noting "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice").[2]  When a claim asserted in a section 2255 motion is procedurally defaulted, the moving party must demonstrate "cause and actual prejudice" to overcome the default.  *See United States v. Frady*, 456 U.S. 152, 167 (1982) (citing *Davis v. United States*, 411 U.S. 233 (1973)); *see also Damon v. United States*, 732 F.3d 1, 4 (1st Cir. 2013) (noting that "[u]nder the longstanding 'procedural default' rule, '[a] nonconstitutional claim that could have been, but was not, raised on appeal, may not be asserted by collateral attack under § 2255 absent exceptional circumstances'").  Regardless of whether Petitioner's argument is considered a constitutional argument grounded in the Commerce Clause or a non-constitutional argument based on the statute of limitations or sufficiency of evidence, Petitioner must demonstrate both cause for

---

[1] Petitioner's reply correctly states that an amendment to the statute enacted after the January 19, 2008, date of the crime as alleged in the indictment would not apply to his prosecution in this case if the amendment disadvantaged him.  (Reply at 17, ECF No. 123.)  *See Weaver v. Graham*, 450 U.S. 24, 28 (1981) ("The *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." (footnote omitted) (quotation marks omitted)).

[2] "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

failing to raise the issue on appeal and prejudice from counsel's failure to raise the issue. Petitioner "must shoulder the burden of showing, not merely that the errors at this trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.[3]

Petitioner cannot demonstrate either cause or actual prejudice because none of his underlying interstate commerce claims has any merit. *See Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (holding that because the petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail"). Preliminarily, his statute of limitations argument has no basis because as of 2006, i.e., before Petitioner's 2008 offenses, there was no limitation period applicable to a violation of 18 U.S.C. § 2252A. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 211(1), 120 Stat. 587 (codified as amended at 18 U.S.C. § 3299); *United States v. Coutentos*, 651 F.3d 809, 817 (8th Cir. 2011). Contrary to Petitioner's contention, the statute does not require the interstate commerce connection to have occurred within a certain period of time before the alleged crime. Thus, the fact that materials used in the course of a section 2252A violation may have traveled in interstate commerce many years ago did not shield Petitioner from prosecution.

In addition, Petitioner's contention that the government did not prove the element of interstate commerce is baseless. Petitioner signed a stipulation that the hard drive and at least two of the tapes at issue traveled in interstate commerce, and he does not attempt to challenge the stipulation in his section 2255 motion. *Clark*, 762 F. Supp.2d at 205. The stipulation satisfies the

---

[3] Actual innocence is an additional "gateway to federal habeas review." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *Bousley v. United States*, 523 U.S. 614, 622 (1998) (holding that a petitioner who is unable to establish cause for his procedural default may nonetheless obtain review of a claimed constitutional error if he can make a showing of actual innocence). Here, Clark makes no claim of actual factual innocence, nor would such a claim have had merit under the facts found by the Court.

interstate commerce element of the offense. *See United States v. Wyatt*, 64 F. App'x 350, 351-52 (4th Cir. 2003) (holding that a nexus between intrastate possession and interstate commerce exists when either the child pornography or the materials used to produce it traveled in interstate commerce, and noting that "it is well settled that Congress may regulate even purely intrastate activity where those activities substantially affect interstate commerce"). Furthermore, there was sufficient evidence to support the Court's finding that Petitioner not only used equipment that traveled in interstate commerce, but that he also transmitted images of child pornography over the Internet. *Clark*, 762 F. Supp. 2d at 205-06. The Court's findings of fact are not equivocal on this point. Petitioner's arguments are thus procedurally defaulted, and his allegations would not support an ineffective assistance of counsel excuse for the default.

### 2. Ground Two: Claim that Evidence was Inappropriately Withheld

Petitioner contends that the prosecution improperly withheld evidence. In particular, Petitioner alleges that (1) pictures that would have been helpful to the defense were taken from his apartment and not provided to the defense; (2) statements from two members of the search team were withheld; (3) a video camera was destroyed and a tape removed after being taken from his apartment; (4) the original video of the search was destroyed and there were gaps in the video that was provided to Petitioner; and (5) at trial, a detective was inappropriately permitted to sit at the prosecution table, convey information to the prosecution but not the defense, and then testify as a witness. Petitioner also asserts that "things were removed" from his home without a search warrant when a member of the search team took the photographs that were found during the search on the first warrant outside before law enforcement obtained the second search warrant. The government maintains that Petitioner's claim of withheld evidence is vague, procedurally defaulted, and fails on the merits.

To the extent Petitioner argues that the government withheld evidence in violation of his due process rights, under *Brady v. Maryland*, 373 U.S. 83 (1963), the argument is unpersuasive. The Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The First Circuit has held that "[t]o establish a *Brady* violation, 'a defendant must make three showings. The evidence at issue (whether exculpatory or impeaching) must be favorable to the accused; that evidence must have been either willfully or inadvertently suppressed by the government; and prejudice must have ensued.'" *United States v. Alverio-Meléndez*, 640 F.3d 412, 424 (1st Cir. 2011) (quoting *United States v. Mathur,* 624 F.3d 498, 503 (1st Cir. 2010)).

Because Petitioner's claims of *Brady* violations are procedurally defaulted, he must demonstrate both cause and prejudice. *See Frady*, 456 U.S. at 167. Petitioner's suggestion that ineffective assistance of counsel was the cause of the procedural default lacks merit. Petitioner has not provided any specific information about his allegations concerning the pictures, the search team members' statements, the video camera, or the videotape that he alleges was removed from the camera. That is, he has failed to provide any specificity as to what the pictures depicted, what the search team members said, what significance the video camera held, or what the videotapes depicted. Petitioner thus has not demonstrated that the evidence that was purportedly withheld or destroyed would have been favorable to him. Because Petitioner has not established that he had a meritorious argument on the issue, he has failed to prove prejudice. *See Tse*, 290 F.3d at 465. "Allegations that are so evanescent or bereft of detail that they cannot reasonably be investigated (and, thus, corroborated or disproved) do not warrant an evidentiary hearing." *David*, 134 F.3d at 478.

Petitioner also complains that a detective sat with counsel for the government at trial and provided information to the prosecution only, thereby withholding evidence from Petitioner. Petitioner argues that the detective should not have been permitted both to sit with the prosecution at trial and serve as a witness for the prosecution. This issue is procedurally defaulted as Petitioner did not previously raise the issue. As to the merits of the argument, the First Circuit has held, pursuant to Fed. R. Evid. 615(b), that case agents who serve as witnesses may not be excluded from trial absent exceptional circumstances. *United States v. Charles*, 456 F.3d 249, 257-58 (1st Cir. 2006) (quoting *United States v. Machor*, 879 F.2d 945, 953 & n.2 (1st Cir. 1989)) (noting the majority view that the Court's discretion to exclude case agents is "'severely curtailed'").[4] Petitioner has made no showing of exceptional circumstances or abuse of discretion by the Court in permitting the detective to sit with the prosecution at trial. Furthermore, Petitioner has not shown that the detective shared with the government any evidence that had not been provided to Petitioner. Because Petitioner's underlying claim has no merit, he cannot demonstrate either cause, i.e., that counsel provided ineffective assistance on this point, or prejudice sufficient to surmount the procedural default. *See Tse*, 290 F.3d at 465.

### 3. Ground Three: Claim of Prosecutorial Misconduct and Perjury

Petitioner asserts prosecutorial misconduct and perjury. Initially, Petitioner alleges that one of the search team members falsely testified that she found pictures in plain view, that she made statements in state court to the contrary, and that the government knowingly permitted her to testify falsely on this point. Petitioner maintains that he needs to have the state court record to substantiate his claim.

---

[4] Fed. R. Evid. 615 states in pertinent part: "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding . . . (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney."

After the suppression hearing, the Court found that the photographs were in plain view because the team was authorized to include paperwork in their search. (Recommended Decision at 28.) *Clark*, 2010 WL 4365562, at *17, 2010 U.S. Dist. Lexis 115048, at *48-49. Petitioner did not appeal this ruling and, therefore, the argument is procedurally defaulted. Petitioner's contention that one of the team members committed perjury because she testified in state court that her co-worker found the photographs, but testified in federal court that she found them, is without merit given that the Court found that the two search team members were together when they found the notepad and the photographs. (Recommended Decision at 9.) *Clark*, 2010 WL 4365562, at *6, 2010 U.S. Dist. Lexis 115048, at *17.[5] Because the allegation of misconduct and perjury lacks merit, there is no basis for finding either cause for the procedural default or prejudice to Petitioner. *See Tse*, 290 F.3d at 465.

Petitioner also advances several procedurally defaulted contentions regarding the computer and video evidence. He alleges that a prosecution computer expert was either wrong or lied about (a) whether anyone can view files that are in the unallocated space in a computer, (b) whether the computer's clock can be reset, and (c) whether copies of original videotapes had been checked to determine that they were accurate copies before being offered in evidence. Contrary to Petitioner's contention, the Court did not find that Petitioner was accessing files after the files were moved into the unallocated space in his computer; rather, the Court found that "the trial record establishes

---

[5] In his Reply, Petitioner essentially asserts a Fourth Amendment violation because photographs were removed from the house and then returned. (Reply at 4.) This argument is baseless. The Court did not find that the evidence was seized without a warrant; rather, it found that the search team member found in plain view the notepad containing a list of web sites, took it downstairs to show the detective, then returned upstairs and found the photographs. At that point, the detective told the original search team to leave without taking anything and advised them that if animal-related evidence were found on further investigation, that evidence would be forwarded to them. *Clark*, 2010 WL 4365562, at *6, 2010 U.S. Dist. Lexis 115048, at *17-18. Even assuming the photographs had been seized and removed from the premises as Petitioner alleges, the evidence lawfully could be seized because it was found in plain view. *Clark*, 2010 WL 4365562, at *16-17, 2010 U.S. Dist. Lexis 115048, at *47-49. *See United States v. Meada*, 408 F.3d 14, 23 (1st Cir. 2005).

beyond any reasonable doubt that the child pornography located in the unallocated space of Petitioner's hard drive, even if no longer readily accessible to him, was at one time in his possession and control." *Clark*, 762 F. Supp. 2d at 209. On that basis, the Court concluded that the child pornography in the unallocated space "provides further compelling evidence that [Petitioner] was collecting and possessing child pornography on his computer." *Id.*

As to Petitioner's specific allegation that a computer expert testified falsely that the clock in a computer could never be reset, it is worth noting that it was Petitioner's counsel who elicited on cross-examination that it is possible to reset the clock. (Trial Tr. 1/25/2011, at 53, ECF No. 98.) More importantly, Petitioner has offered no basis, nor does the record contain a basis, to support his argument. There is also no basis for Petitioner's claim that the person who checked the videos that were presented in Court either misspoke or lied. A Federal Bureau of Investigation special agent testified that he reviewed the evidence to make sure that the footage in the videos on the DVDs offered in evidence matched the footage on the original VHS tapes. (Trial Tr. 1/24/2011, at 105, ECF No. 97.) Petitioner argues that this was not possible because the tape of the search has been destroyed. The subject matter of the agent's testimony, however, was not the video recording of the search. Instead, at trial, the agent testified as to the video recording of child pornography. Petitioner's argument, therefore, misconstrues the evidence about which he complains, and does not constitute cause or prejudice to overcome the procedural default.

Finally, Petitioner alleges that the veterinarian on the search team falsely testified that she did not know that Petitioner's living quarters were separate despite the fact that she was aware that other people were living on the premises and that Petitioner's room had an outside entrance. He asserts that this is contrary to the evidence that was presented in the state court proceedings where the animal control officer testified that he told the veterinarian that the apartment was separate.

The Court's findings on the suppression motion included a finding that the veterinarian did not observe

> anything indicating that the second floor housed a separate apartment or dwelling unit; for example, they observed no signage, numbering, name plate, or mailbox. The door to the defendant's bedroom was closed but unlocked. There is a door leading from the defendant's bedroom to the exterior of the house. However, that door was obscured by laundry hanging from a clothes line, and [the veterinarian] did not observe it on January 19, 2008. The defendant admits that this exterior door was not operable at the time of the search.

(Recommended Decision at 8.) *Clark*, 2010 WL 4365562, at *5, 2010 U.S. Dist. Lexis 115048, at *15-16. Although Petitioner challenged the assertions in the veterinarian's affidavit in the context of the suppression hearing, he did not appeal the issue whether he had separate living quarters. *Clark*, 685 F.3d at 74 & n.3 (noting that the sole suppression issue was probable cause that evidence of animal cruelty or an unlicensed kennel operation would be found, and additional issues advanced in support of suppression had been "abandoned on appeal"). Consequently, the issue as to whether Petitioner had separate living quarters is procedurally defaulted.

Even if the issue had been preserved, the Court's factual finding likely would have been upheld on a review for clear error because the credibility determinations on which the finding was based were the product of the Court's assessment of testimony that was not "'inherently implausible, internally inconsistent, or critically impeached.'" *United States v. Meléndez-Santiago*, 644 F.3d 54, 61 (1st Cir. 2011) (quoting *United States v. Merlino*, 592 F.3d 22, 27 (1st Cir. 2010)). Petitioner thus has not demonstrated either cause or prejudice to excuse the procedural default.

### 4. Ground Four: Claim That Search Warrants Were Invalid

Petitioner argues that the search of his living quarters for evidence of animal cruelty was illegal because his living quarters were separate, and because he was never charged with animal

cruelty or with maintaining an unlicensed kennel. This argument fails as explained in the probable cause discussion above. *See Clark*, 685 F.3d at 74.

Petitioner also argues again that the evidence found during execution of the second warrant should not have been admitted at trial. He contends that the evidence should not have been admitted because members of the search team searched for child pornography before obtaining a search warrant, and because a certain member of the team did not find the pictures. As explained in the context of Petitioner's challenge to probable cause and Petitioner's contention that the government presented perjured testimony, Petitioner's arguments lack merit. (Recommended Decision at 9, 28.) *Clark*, 2010 WL 4365562, at *6, 16-17, 2010 U.S. Dist. Lexis 115048, at *17, 47-49. Petitioner, therefore, has failed to demonstrate either cause or prejudice, and the procedural default remains.

### 5. Ground Five: Claim Based on the Lack of Miranda Warnings

Petitioner argues that certain statements that he made to a detective should not have been admitted at trial because law enforcement did not administer a *Miranda* warning prior to questioning him. He alleges that he made the statements to the detective on the day after the search, while he was at home. The government argues that this claim is procedurally defaulted; alternatively, the government contends that Petitioner's argument fails on the merits because Petitioner was not in custody when he was questioned.

The Supreme Court in *Miranda v. Arizona* held that a defendant's statements are inadmissible if law enforcement failed to warn the defendant of certain constitutionally protected rights prior to conducting a custodial interrogation: "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-

incrimination." 384 U.S. 436, 444 (1966). Petitioner maintains that because he had been held by law enforcement in the basement during the search, on the next day when the detective came to question him, he "had every expectation" that the detective would take him to jail if he did not answer the detective's questions. An interrogation by law enforcement in a person's home is not necessarily custodial. *See Beckwith v. United States*, 425 U.S. 341, 342-47 (1976) (holding that an interview in the home of the defendant conducted by two law enforcement agents was not custodial); *United States v. Hughes*, 640 F.3d 428 (1st Cir. 2011) (holding that an interview was not custodial, noting the short duration and non-confrontational nature of the interview). Petitioner asserts no facts to support the conclusion that his interaction with law enforcement on the day following the search of his home constituted a custodial interrogation. Because the claim fails on the merits, Petitioner has made no showing of either cause or prejudice. *See Tse*, 290 F.3d at 465. The procedural default thus prevents Petitioner from proceeding on this claim.

### 6. Ground Six: Claim of Failure to Hear Motion in State Court

Petitioner asserts that he is entitled to relief because the state court did not hear and decide a motion that he filed in connection with the first search warrant.[6] In the motion, filed in the state court proceeding to which his mother was a party, Petitioner requested the return of his property that was seized during the search. A review of the motion suggests that Petitioner attempted to use the motion to challenge the legality of the search. Petitioner evidently maintains that because he was not heard on the issue, the federal court should not rely on the state court's finding of probable cause in the context of his mother's case. Petitioner's position lacks a factual basis. This Court made its own finding of probable cause, which finding was affirmed by the First Circuit.

---

[6] In Ground Six of the petition, Petitioner states: "My motion about the 1st Search Warrant was never heard in State Court. Therefore, the Supreme Court of Maine never heard anything on my part of the Search Warrant as the Government said they did. As a matter of fact, my motion was stopped by Prosecutor Murphy in a letter to the Court in Lincoln County." (Motion at 17.)

(Recommended Decision at 15-17.) *Clark*, 2010 WL 4365562, at \*9-10, 2010 U.S. Dist. Lexis 115048, at \*27-29; *Clark*, 685 F.3d at 78-79. Because Petitioner was heard on the issue of probable cause in this Court, whether he had an opportunity to argue the issue in his mother's state court proceeding is immaterial.

### 7. Ground Seven: Claim of Ineffective Assistance of Counsel (Based on Various Allegations)

In Ground Seven, citing a number of instances, Petitioner asserts a claim of ineffective assistance of counsel.[7] Petitioner alleges that counsel told him he was a liar; that counsel failed to conduct an appropriate investigation in the case; that counsel refused to act on Petitioner's request for a jury trial, his request to testify, and his request to present other witnesses; and that counsel was incompetent. As explained earlier, for purposes of determining whether an evidentiary hearing is needed on Petitioner's section 2255 motion, Petitioner's allegations are accepted as true except to the extent the record demonstrates otherwise. *See Owens*, 483 F.3d at 57.[8]

Counsel's alleged comment to Petitioner that he did not personally believe some of Petitioner's statements (regardless of the way in which such a comment may have been phrased),

---

[7] Some of Petitioner's other arguments, either implicitly or explicitly, question the effectiveness of his counsel's representation. To the extent that this decision has previously addressed the issues, this portion of the decision will not address them.

[8] The government argues that any allegations that Petitioner makes "in the unsworn portion" of the petition, i.e., the handwritten attachment to the petition, should be summarily dismissed. (Response at 29, 34-35.) The government cites *United States v. Labonte*, 70 F.3d 1396 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997), in which the First Circuit held that a section 2255 petition was fatally defective because the petitioner did not present his factual allegations under oath. *Id.* at 1413. In *Labonte*, the Court noted that the petitioner had submitted an "unsworn memorandum." *Id.* As the government points out, Petitioner signed the petition under the statutory alternative to the oath. (Response at 29.) *See* 28 U.S.C. § 1746. He also signed his reply in a similar manner. (Reply at 19, ECF No. 123.) Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings requires that the section 2255 motion "be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." As Petitioner points out, he used a form petition that provides that additional pages may be attached to the petition if necessary to fully state the claims. The standard form that Petitioner used states: "For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds." (Motion at 5.) Because the form itself states that additional pages may be added, it is logical to conclude that the additional pages should be considered to have been incorporated in the petition by reference and signed under penalty of perjury. Separate filings may be another matter, but in this case, it appears that the government's objections are to an attachment that is actually part of the petition itself.

does not, without more, amount to ineffective assistance of counsel. Petitioner does not allege that counsel made this statement to anyone else in the case, nor does he point to any facts that suggest that his counsel's view of Petitioner's veracity could have resulted in counsel's ineffectiveness. Counsel's belief in a client's truthfulness is not a prerequisite to effective assistance of counsel. Indeed, counsel must refrain from expressing a personal opinion about the veracity of the client. *See United States v. Diozzi*, 807 F.2d 10, 14 n.8 (1st Cir. 1986) (noting that the jury may be instructed that "attorneys may not vouch for the truth of their clients' statements").

Petitioner also claims that counsel failed to investigate and use information from the state court proceeding involving his mother, Fern Clark. Not insignificantly, Petitioner does not identify the information that he believes his counsel should have obtained, or how that information would have helped his defense. Rather, he says simply: "All he had to do was go to Lincoln County Courts and get all the information. I did not know he didn't get the State Hearings until my trial started. Of course, he told me the state wouldn't give them to him." He later asserts, "If I had them I could tell you when and where they lied but a competent attorney would've done all this."

Summary dismissal of a motion is permitted when the allegations are vague. *David*, 134 F.3d at 478 (quoting *Machibroda*, 368 U.S. at 495). It is appropriate to expect the petitioner to supply the court with salient details of his claim prior to permitting discovery or a hearing. *Id.; see also Barreto–Barreto v. United States,* 551 F.3d 95, 99–100 (1st Cir. 2008) (noting that undeveloped arguments are deemed waived). Here, Petitioner has not provided any specificity regarding the portions of the state court proceedings that would have been helpful, or the information that would have been generated through additional investigation. Petitioner's contention that his counsel failed to call certain witnesses is similarly vague. Furthermore, Petitioner's argument that his counsel admitted incompetence by commenting that his children

refer to him as "an absent-minded professor" is without merit. Petitioner has failed, therefore, to identify any facts or issues that warrant an evidentiary hearing.

Finally, Petitioner's argument that counsel refused to help him exercise his right to a jury trial and his right to testify is in direct contrast to the unequivocal record, which reflects that after consulting with counsel, Petitioner completed a valid jury trial waiver in accordance with Fed. R. Crim. P. 23(a),[9] and that in both the hearing and at trial, he waived his right to testify.[10] (Hearing Tr., ECF No. 102; Trial Tr. 1/26/2011, at 50-51, ECF No. 99.) *See United States v. Leja*, 448 F.3d 86, 92-95 (1st Cir. 2006) (discussing the requirements for a knowing and voluntary waiver of the right to a jury trial).

---

[9] In the waiver signed by the parties and the Court, Petitioner stated that he acknowledged he was fully informed of his right to a trial by jury, and he waived that right. (Waiver, ECF No. 64.) At the hearing on the waiver, Petitioner testified that he was a self-employed electrician. (Hearing Tr. at 3, ECF No. 101.) Counsel represented that he and Petitioner had discussed the issues relating to waiver and that he was satisfied that Petitioner understood the nature and significance of the waiver. (Hearing Tr. at 3.) Counsel said: "We've had several conversations, most recently a week ago Saturday, for several hours, weighing the pros and cons, the nature of the evidence the Government would bring, and how that would affect a jury one way or the other." (*Id.* at 3-4.) The Court asked Petitioner if it was his desire to waive his right to a jury, and Petitioner said it was. (*Id.* at 4.) The Court asked him a number of additional questions to ensure that the waiver was knowing and voluntary. (*Id.* at 4-8.) At the conclusion of thorough questioning, the Court then found that Petitioner knowingly and voluntarily waived his right to a jury trial, and the Court accepted the waiver. (*Id.* at 9-10.) Petitioner in this section 2255 motion alleges, "I wanted a jury, he [Petitioner's counsel] said no." (Motion at 18.) This allegation does not overcome the presumption of verity attached to the statements Petitioner made in the jury waiver hearing. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")

[10] Petitioner alleges, "I wanted to testify, he [Petitioner's counsel] said no." (Motion at 18.) At the hearing on the waiver of his right to a jury, Petitioner told the Court that he understood that in waiving his right to a jury trial, he was either waiving the right to testify or to choose not to testify in front of the jury without inference or suggestion of guilt from that decision. (Hearing Tr. at 6.) Regarding Petitioner's decision whether to testify at the bench trial, counsel represented to the Court: "Mr. Clark will tell me whether he wants to testify . . . . I've obviously advised him of my professional opinion." The Court then stated: "Fine. I'll talk to him once he makes his decision." (Trial Tr. 1/25/2011, at 89, ECF No. 98.) Just before the defense rested, the Court conducted a colloquy with Petitioner about his right to testify. (Trial Tr. 1/26/2011, at 50-51, ECF No. 99.) Counsel represented that he had advised Petitioner and on that basis Petitioner was going to waive his right to testify. In response to the Court's questions, Petitioner said he understood that he had a constitutional right to testify or to choose not to testify and that if he chose not to, no negative inference would be drawn from that fact. (*Id.* at 50.) The Court clarified that although counsel can advise, ultimately the choice was Petitioner's. (*Id.* at 51.) Petitioner told the Court that he had decided not to testify. (*Id.*) Petitioner's allegation in this section 2255 motion that he wanted to testify does not overcome the "strong presumption of verity" given to his prior statement in open court that he did not wish to testify. *See Blackledge*, 431 U.S. at 73-74.

**8. Ground Eight: Claim that Counsel was Intimidated in Court**

Petitioner also contends that his counsel was "scared of the Judge," and, therefore, did not ask all of the necessary questions of the trial witnesses. Simply stated, Petitioner alleges no facts to substantiate his claim that Petitioner's counsel failed to ask any material questions or object to any questions because he was intimidated or for any other non-strategic reason. "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action "might be considered sound trial strategy."'" *Bucci*, 662 F.3d at 30 (quoting *Strickland,* 466 U.S. at 689). Even assuming that the alleged facts are true, Petitioner cannot overcome this "strong presumption."

**9. Ground Nine: Claim that Counsel was Biased**

Petitioner claims that his counsel was biased and thus provided ineffective assistance to him. First, he alleges that counsel made homophobic comments to him.[11] In addition, Petitioner contends that his counsel told him that he was "best friends" with Petitioner's former state probation officer.

"Few commitments from an attorney to a client are more important than 'a duty of loyalty, a duty to avoid conflicts of interest.'" *United States v. Colón-Torres*, 382 F.3d 76, 88 (1st Cir. 2004) (quoting *Strickland*, 466 U.S. at 688) (addressing a claim of ineffective assistance of counsel on direct appeal based on a developed record). Comments reflecting bias by the attorney would understandably undermine the client's confidence that the attorney was committed to the duty of loyalty and of avoiding conflicts of interest. However, "'in order to show an actual conflict of interest, a defendant must show that (1) the lawyer could have pursued a plausible alternative

---

[11] Petitioner alleges that counsel told him that Petitioner "made him sick" and asked how Petitioner could "have sex with a man." (Motion at 18-19.) Petitioner also alleges that he responded, "I never had." He further asserts that counsel told him he thought Petitioner was gay.

defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties.'" *Id.* (quoting *United States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir. 1994)).

The record contains no information to support Petitioner's contention that his counsel harbored a homophobic bias that negatively influenced his representation of Petitioner. Given the nature of the criminal charges, Petitioner's counsel attempted to exclude from the trial any reference to Petitioner's sexual orientation.[12] He also sought to limit the impact on the sentence of Petitioner's perceived sexual orientation. In short, Petitioner has failed to demonstrate his counsel's bias, or if a homophobic bias existed, that the bias adversely affected his counsel's representation.

Petitioner's argument that his counsel's relationship with Petitioner's probation officer resulted in ineffective assistance of counsel also fails. Petitioner does not provide any information that could support a finding that the performance of Petitioner's counsel was in any way influenced by his counsel's relationship with Petitioner's probation officer.

### 10. Ground Ten: Claim that Indictment Should Not Have Been Split

Petitioner claims that the indictment should not have been split into two counts, and that counsel was ineffective for failing to challenge the indictment on this basis. This argument could be based on the First Circuit's note in its opinion on Petitioner's direct appeal that "[t]he defendant has not challenged the splitting of the indictment into two counts, and we do not comment further on that circumstance." *Clark*, 685 F.3d at 74 n.4.

---

[12] Petitioner's counsel, in objecting to certain evidence, said "Mr. Clark may be gay or these images may be males, which is irrelevant here and it's completely inconsequential." (Trial Tr. 1/24/2011, at 80, ECF No. 97.) "With regard to sexuality or sexual preference, it isn't necessarily relevant to his interest in children." (Trial Tr. 1/24/2011, at 83-84.) When counsel renewed a motion under Fed. R. Crim. P. 29 for dismissal, he argued that the fact "that Mr. Clark may be attracted to boys and may be attracted to young boys is not the same, is not the same as saying he possesses child pornography . . . ." (Trial Tr. 1/26/2011, at 88-89, ECF No. 99.)

Preliminarily, Petitioner is procedurally defaulted on the issue because he did not raise it on the direct appeal. Petitioner must, therefore, demonstrate cause and prejudice to overcome the default. Petitioner cannot establish prejudice as to the sentence because the sentence on the two counts was concurrent both as to the term of imprisonment and as to the term of supervised release. Petitioner nevertheless maintains that he was prejudiced by the imposition of a $100 monetary penalty on each of the counts, for a total of $200. However, challenges to monetary penalties are not cognizable in section 2255 cases. *See Rodriguez v. United States*, 132 F.3d 30 (1997) (per curiam) (unpublished) (citing *Smullen v. United States*, 94 F.3d 20, 25 (1st Cir. 1996)). "[A] person in custody cannot bring an ineffective assistance of counsel claim challenging a fine because that person is not claiming a right to release from custody." *Smullen*, 94 F.3d at 25 (quotation marks omitted).

Additionally, the splitting of the indictments cannot successfully support an ineffective assistance of counsel argument. Objectively valid reasons, including the different evidentiary issues presented by the videotapes at issue in Count I and the computer at issue in Count II, existed for separate proceedings on each charge. Furthermore, to the extent Petitioner is claiming ineffective assistance based on a failure to argue double jeopardy, such a claim is without merit, given that there was a single trial and Petitioner did not receive multiple terms of imprisonment or multiple terms of supervised release. *See Seeley v. United States*, 57 F.3d 1061 (1st Cir. 1995) (per curiam) (unpublished) (citing *United States v. Dixon*, 509 U.S. 688, 695-96 (1993)).

### 11. Ground Eleven: Claim that the Sentence was Excessive

Petitioner claims that his sentence is excessive and that the Court erred in applying a sentencing enhancement for a pattern of activity because the two predicate convictions for the enhancement were too remote in time. Petitioner's claim that the sentence is excessive is

procedurally defaulted and lacks merit. The 210-month sentence was at the low end of the guidelines range. The Court based its sentence on its guideline calculation that the base offense level was 18 and increased the base level by 18 to a total offense level of 36 as follows: (1) two levels for possession of materials involving images of prepubescent minor children; (2) four levels because at least one image depicted a juvenile in a bondage scenario; (3) five levels because Petitioner engaged in a pattern of activity; (4) two levels for having taped images off a computer; and (5) five levels due to the large number of images. (*Id.*) Petitioner had a criminal history category of II, which, combined with the total offense level of 36, yielded a sentencing range of 210 to 240 months.[13] (Sentencing Tr. at 32-33, ECF No. 101.)

"[T]he fact that a sentence falls *within* a properly constructed [guideline sentencing range] typically affords some basis for concluding that the sentence is substantively reasonable." *United States v. King*, 741 F.3d 305, 310 (1st Cir. 2014) (citing *United States v. Pelletier*, 469 F.3d 194, 204 (1st Cir. 2006)). "[A] defendant who attempts to brand a within-the-range sentence as unreasonable must carry a heavy burden." *Pelletier*, 469 F.3d at 204. Petitioner has not attempted to meet that burden, nor does the record support Petitioner's argument given that the Court imposed a sentence that was at the low end of the guideline sentencing range.

Petitioner also attempts to challenge the pattern-of-abuse sentencing enhancement that was upheld on appeal. *Clark*, 685 F.3d at 79. In addition to his general assertion that there was no pattern of abuse, Petitioner challenges the authenticity of the record of his prior conviction from the court martial charges, and he asserts that the jury actually found him not guilty in the state court matter on which the Court relied. Petitioner's own sentencing memorandum refers to his 1984 conviction on three counts of unlawful sexual contact and does not assert that he was found

---

[13] The maximum term of imprisonment of 20 years, which is 240 months, is set by statute. *See* 18 U.S.C. § 2252A(b)(2).

not guilty of those charges. (Sentencing Memorandum at 3, ECF No. 90.) At the sentencing hearing on the federal charges, Petitioner's counsel acknowledged and discussed the prior convictions, after which the Court asked Petitioner if he had anything to say to the Court concerning his sentence. (Sentencing Tr. at 28, 30-31, ECF No. 101.) Although Petitioner addressed the Court, he did not say anything about a jury not returning a finding of guilty in the prior conviction. (Sentencing Tr. at 31-32.) The record thus contravenes Petitioner's assertion that he was found not guilty of that offense.

On Petitioner's appeal, the First Circuit held that it was bound by its holding in *United States v. Woodward*, 277 F.3d 87, 90-92 (1st Cir. 2002), that prior sexual assault convictions, regardless of the age of the conviction, could be considered when applying an enhancement for a pattern of abuse. *Clark*, 685 F.3d at 79 & n.5. The First Circuit's ruling on the Petitioner's sentencing enhancement is the law of the Petitioner's case and cannot be challenged in a collateral appeal. The "law of the case" doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Leahy*, 668 F.3d 18, 21 (1st Cir. 2012) (quoting *United States v. Matthews*, 643 F.3d 9, 12-13 (1st Cir. 2011)).

Given that Petitioner's challenges to the sentence lack merit, Petitioner's claim of ineffective assistance, to the extent it is based on those challenges, also fails. *See Tse*, 290 F.3d at 465.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases, and the recommendation is that the Court dismiss Petitioner's motion for habeas relief under 28 U.S.C. section 2255, and that the Court deny a

certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

March 25, 2014